**Susan CAMILLI, Plaintiff–Appellee,**

v.

**Charles GRIMES, Defendant–Appellant.**

**Docket No. 05–1914–CV.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 9, 2005.

Decided: Jan. 26, 2006.

Robert L. King, Debevoise & Plimpton, LLP, New York, N.Y., for Defendant–Appellant.

Thomas A. Butler, Butler, Fitzgerald, Fiveson & McCarthy, New York, N.Y., for Plaintiff–Appellee.

Before: NEWMAN, CABRANES, and HALL, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal concerns the authority of a district court to dismiss a complaint without prejudice. The precise issue is whether a district court exceeds allowable discretion by dismissing a complaint without prejudice, thereby denying a defendant the opportunity to sue a plaintiff for malicious prosecution. The issue arises on an appeal by Defendant–Appellant Charles Grimes from the March 22, 2005, order of the United States District Court for the Southern District of New York (John E. Sprizzo, District Judge). The judgment dismissed Plaintiff–Appellee Susan Camilli's claims against Grimes for malicious prosecution and abuse of process without prejudice, subject to specified conditions. We affirm.

## Background

This protracted and acrimonious dispute between Camilli and Grimes began as a will contest in 1985. Camilli, then living in Paris, France, needed a lawyer for probate proceedings regarding her mother's will. She contacted Grimes, a duly licensed attorney in New York, who referred her to other lawyers whom she retained. The probate proceedings lasted until the end of 1990, when Camilli and her siblings reached a settlement after a jury trial. Over the course of these proceedings, Grimes lent Camilli a total of $430,000.

In early 1991, Grimes sued Camilli in New York state court ("the First Action"), seeking attorney's fees and the outstanding portion of the loan. Grimes obtained an attachment of certain assets of Camilli

in the United States on the grounds that she was a non-resident and non-domiciliary. In 1994, Grimes obtained summary judgment in his favor on his claims for interest from the loans, which Camilli paid. In April 1995, Camilli successfully moved to vacate the attachment of her assets.

In October 1995, the New York Supreme Court held a trial on Grimes's claim for attorney's fees. Grimes claimed at trial that he had entered into an oral agreement with Camilli requiring her to pay Grimes legal fees in an amount equal to the total sum billed by counsel on all sides of the probate dispute. After Grimes presented his case, the trial judge dismissed Grimes's claims as unconscionable as a matter of law. The Appellate Division affirmed, and review by the New York Court of Appeals was denied.

In November 1996, while the appeals were pending, Grimes filed another action against Camilli in New York state court ("the Second Action"), asserting that Camilli owed him legal fees for services rendered in connection with the will contest and other litigation. In October 1997, Camilli moved for summary judgment on grounds of *res judicata* and sought sanctions. Grimes apparently did not respond to the merits of Camilli's summary judgment motion, but instead repeatedly moved for adjournment. After hearing argument in February 1998, the New York trial court granted Camilli's motion and dismissed the Second Action on the merits. The trial court denied the motion for sanctions, noting that counsel had advised that Camilli was pursuing remedies in federal court.

The federal court action to which the New York trial court referred was the instant action, which Camilli filed in July 1997.[1] Camilli alleged three claims against

Grimes: wrongful attachment, malicious prosecution, and abuse of process. Her Amended Complaint mentions the Second Action by Grimes, but only with respect to her abuse of process claim. In 2000, the parties agreed to bifurcate the proceedings and try the wrongful attachment claim first.

In October 2001, Judge Sprizzo conducted a three day bench trial on the wrongful attachment claim. In February 2002, after closing arguments, Judge Sprizzo ruled from the bench. He found against Camilli, concluding that the attachment was not wrongful as a matter of law, and that she "totally failed to prove ... that she suffered these damages as a consequence of the attachment." Judge Sprizzo also raised the issue of monetary sanctions for the failure of Camilli and her attorneys to disclose the fact that she had assigned 75 percent of her interest in the outcome of the lawsuit to the "Susan Devine Camilli Foundation, Inc.", which was also paying her legal expenses. Judge Sprizzo deferred determination of the sanctions issue at that time.

Despite motions by Grimes for summary judgment on the remaining claims, the Court took no further action until May 2004, when the case was placed on the Suspense Docket. It was restored to the Active Docket in June 2004, and scheduled for trial in January 2005.

At a pretrial conference, the Court first considered Camilli's oral motion to amend her complaint to withdraw her claims concerning the First Action and add claims for malicious prosecution, prima facie tort, and sanctions concerning the Second Action. During the hearing, it became apparent to Camilli's counsel that her claims seeking damages for emotional distress

---

1. Federal jurisdiction was founded upon diversity of citizenship; Camilli having established New York citizenship by this time, and Grimes being a resident of Pennsylvania.

would allow potentially embarrassing information to be disclosed in open court. After a brief recess, Camilli's counsel informed the Court that she preferred not to go forward with her claims that depended upon proof of emotional distress—the malicious prosecution and abuse of process claims. Judge Sprizzo then expressed reservations about his jurisdiction over Camilli's sanctions claim.

After considering whether he should entertain the sanctions claim if the other claims were abandoned, Judge Sprizzo proposed to Camilli's counsel the disposition that gives rise to the pending appeal: "[Y]our best result here is to let me discontinue your claims without prejudice, and then if Mr. Grimes sues you again, you can then reassert them." Camilli's counsel quickly agreed; Grimes's counsel objected. Judge Sprizzo explained that Camilli could not assert her claims again, except defensively in the event that Grimes sued Camilli. Judge Sprizzo concluded by stating that he would take the outstanding motion for sanctions under advisement.

On March 22, 2005, the order of discontinuance was entered. Camilli's action was discontinued "without prejudice to plaintiff's right to reassert her claims in defense to any related suit brought by defendant." Judge Sprizzo similarly dealt with Grimes's motion for financial sanctions, denying it "without prejudice to defendant's right to reassert such application should plaintiff reassert her aforementioned claims."

## Discussion

■ This Court reviews a decision to dismiss without prejudice pursuant to Fed. R.Civ.P. 41(a)(2) for abuse of discretion. *See Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir.1990). Two lines of authority have developed with respect to the circumstances under which a dismissal

without prejudice might be improper. One line indicates that such a dismissal would be improper if "the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *see Jones v. SEC*, 298 U.S. 1, 19, 56 S.Ct. 654, 80 L.Ed. 1015 (1936). Another line indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss. *See D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir.1996); *Zagano*, 900 F.2d at 14.

■ In the typical case of a Rule 41(a)(2) dismissal without prejudice, the plaintiff has obtained the unfettered right to renew the action against the defendant. In the pending case, however, Camilli has not been given the unfettered opportunity to renew her claims against Grimes. She can reassert her claims only in defense of any related suit that Grimes might bring against her. Thus, Grimes, not Camilli, is in control of whether Camilli's claims are ever reasserted. In these circumstances, where no possibility of relitigation at the instance solely of the plaintiff exists, the *Zagano* factors have little, if any, relevance. However, consideration must nevertheless be given to whether Judge Sprizzo's qualified dismissal without prejudice results in "some plain legal prejudice" to Grimes. Grimes contends that it does because the District Court's order effectively precludes him from bringing a malicious prosecution action against Camilli because

the order deprives him of a favorable termination of Camilli's suit against him. *See O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996) (New York law requires favorable judgment on the merits of suit on which malicious prosecution claim is based).

When the Supreme Court identified "plain legal prejudice" to a defendant as a circumstance that would defeat dismissal of a plaintiff's suit without prejudice, it was not thinking about a defendant's lost opportunity to retaliate against a plaintiff by suing for malicious prosecution. The Court was concerned about the plight of a defendant who is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed. In *Jones*, the Court traced this concern to a decision of Chief Justice Taft, *In re Skinner & Eddy Corp.*, 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912 (1924), which summarized the law as follows:

> The right to dismiss, if it exists, is absolute. It does not depend on the reasons which the plaintiff offers for his action. The fact that he may not have disclosed all his reasons, or may not have given the real one, cannot affect his right.

> The usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree.

*Skinner & Eddy*, 265 U.S. at 93–94, 44 S.Ct. 446, *quoted in Jones*, 298 U.S. at 20, 56 S.Ct. 654.

It is one thing to protect a defendant's right to pursue an existing counterclaim in the same action that a plaintiff is trying to withdraw. It would be an entirely different matter to require that dismissal of a plaintiff's suit be with prejudice simply to enable the defendant to initiate a new claim for malicious prosecution. Indeed, if loss of the opportunity to initiate a malicious prosecution suit could defeat a dismissal of a plaintiff's suit without prejudice, every defendant could insist on a dismissal with prejudice by asserting an intention to sue for malicious prosecution. Although malicious prosecution is a recognized tort that ought not to be precluded without some justification, it is difficult to imagine circumstances more compelling than those of the pending case to warrant foreclosure of the retaliatory strike that Grimes wants to pursue. Judge Sprizzo acted well within his discretion by effectively ending a litigation war, then in its fourteenth year, with a dismissal without prejudice even though a lawyer, already found to have made an unconscionable claim against his former client, was thereby foreclosed from continuing the war with a malicious prosecution suit.

We recognize that two trial courts have declined to dismiss suits without prejudice, explicitly on the ground that such a dismissal would deprive a defendant of the opportunity to sue for malicious prosecution. *See Selas Corp. v. Wilshire Oil Co.*, 57 F.R.D. 3, 6 (E.D.Pa.1972); *In re Sizzler Restaurants International, Inc.*, 262 B.R. 811, 821 (Bankr.C.D.Cal.2001); *see also Kappa Publishing Group, Inc. v. Poltrack*, No. 94–7687, 1996 WL 146259, at *2 (E.D.Pa. Mar.29, 1996) (indicating that dismissal without prejudice would deprive a defendant of a "significant right" to maintain an action for malicious prosecution, but that reimbursement of the defendant's fees and costs would "obviate this concern"). Both the district court in *Selas*, 57

F.R.D. at 7, and the bankruptcy court in *Sizzler*, 262 B.R. at 822, recognized that a general rule barring a dismissal without prejudice in the face of a defendant's stated intention to sue for malicious prosecution would make such dismissals impossible and therefore refrained from implying such a broad rule. In *Selas*, the court explicitly limited its decision to the facts of the case, 57 F.R.D. at 7, emphasizing that the party resisting the dismissal without prejudice was "at most a peripheral defendant," who had "been put to considerable inconvenience and expense as a result of being forced to defend himself," *id.* at 6. Whatever equities might have weighed against a dismissal without prejudice in *Selas* and *Sizzler*, Judge Sprizzo's carefully conditioned dismissal without prejudice in the pending case was entirely justified. He did not exceed his discretion, notwithstanding the Defendant's expressed intention to bring a suit for malicious prosecution.

### Conclusion

The order of the District Court is affirmed.